
# IN THE SUPREME COURT OF GUAM

**PEOPLE OF GUAM,**
Plaintiff-Appellee,

**v.**

**GILBERTO FLORENDO KUSTERBECK,**
Defendant-Appellant.

Supreme Court Case No.: CRA23-002
Superior Court Case No.: CF0142-20

## OPINION

## Cite as: 2024 Guam 3

Appeal from the Superior Court of Guam
Argued and submitted on November 14, 2023
Hagåtña, Guam

Appearing for Defendant-Appellant:
Peter C. Perez, *Esq.*
Law Office of Peter C. Perez
DNA Bldg.
238 Archbishop Flores St., Ste. 802
Hagåtña, GU 96910

Appearing for Plaintiff-Appellee:
Christine Santos Tenorio, *Esq.*
Assistant Attorney General
Office of the Attorney General
General Crimes Division
590 S. Marine Corps Dr., Ste. 801
Tamuning, Guam 96913


**E-Received**
9/20/2024 10:58:45 AM

BEFORE: ROBERT J. TORRES, Chief Justice; F. PHILIP CARBULLIDO, Associate Justice; and KATHERINE A. MARAMAN, Associate Justice.

**CARBULLIDO, J.:**

[1]      Defendant-Appellant Gilberto Florendo Kusterbeck appeals his convictions of one count of First Degree Criminal Sexual Conduct ("CSC I") and two counts of Second Degree Criminal Sexual Conduct ("CSC II"). He argues there was insufficient evidence on the timing of the offenses, that hearsay was admitted through officer testimony, and that the expert witness was not properly qualified. He asks this court to vacate his convictions. We affirm the Superior Court's judgment.

## I.  FACTUAL AND PROCEDURAL BACKGROUND

[2]      Kusterbeck was initially indicted on two counts of CSC II for two touching incidents allegedly committed against P.B. between April 1 and December 1, 2018, and January 1 and February 28, 2019, respectively. Based on an interview the Attorney General's office had with P.B., a superseding indictment was obtained that added one count of CSC I, alleged to have occurred between January 1 and August 1, 2018.

### A.  Testimony of P.B.

[3]      P.B., who was 13 years old at the time of trial, testified that Kusterbeck committed criminal sexual conduct ("CSC") against her on three occasions. The first time, she woke up to him touching her vagina over her clothes. She could not recall when this incident occurred but knew she was living in Santa Rita at the time. Testimony from other witnesses indicated the family lived in Santa Rita for several years before moving sometime in 2018.

[4]      For the second incident, P.B. testified that while in Kusterbeck's truck, he unzipped his pants and forced her to perform oral sex on him. She remembered this occurring when she was in

second or third grade. As to the final incident, like the first, P.B. said she woke up to Kusterbeck touching her vagina over her clothing. She testified that this incident occurred on the weekend when she was living in an orange house, around the fourth grade.

### B. Testimony of Officer Pewtress

[5]      Office Pewtress, the police officer who interviewed P.B., testified as a part of the People's case-in-chief. Additionally, defense counsel elicited the following testimony on cross-examination surrounding the officer's interview with P.B.:

> Q      Okay. And was there a date given to you as to when [the first incident] happened?
>
> A      No, sir.
>
> Q      Was there a month given to you as to when it happened?
>
> A      I don't believe so, no.
>
> Q      Was there a year?
>
> A      Yes.
>
> Q      Do you recall what year?
>
> A      2018.
>
> Q      Okay. Was there a time of day?
>
> A      It was afternoon.

Transcript ("Tr.") at 57 (Jury Trial, Aug. 23, 2022). This same line of questioning occurred about the final incident:[1]

> Q      Okay. And was there a day given when that happened?
>
> A      No, sir.

---

[1] At trial, defense counsel referred to this as the second incident, perhaps because it was charged as Count Two of Charge Two or because it was the second alleged touching incident. Transcript ("Tr.") at 57 (Jury Trial, Aug. 23, 2022). For clarity, this is referred to as the third or final incident, as Officer Pewtress's testimony refers to Count Two of the Second Charge. *See* Record on Appeal ("RA"), tab 59 at 1 (Superseding Indictment, Jan. 4, 2022).

Q        A month?

A        No, sir.

Q        A year?

A        Yes.

Q        What year?

A        2019.

*Id.* at 57-58.

[6]      After refreshing the officer's memory, the People elicited the following testimony about

the final incident on redirect:

Q        Did [P.B.] tell you what month in 2019 that the [third] incident
occurred, the one at [the orange house]?[2]

A        Yes, sir, January or February of 2019.

Q        Did she say what day of the week it was by chance?

A        Possibly on the weekend.

*Id.* at 60.

## C.  Testimony of Maria Teresa Aguon

[7]      The People's expert witness, Maria Teresa Aguon, testified on delayed reporting.

Kusterbeck filed a motion in limine seeking to prohibit Aguon's testimony under Guam Rule of

Evidence ("GRE") 702.  Kusterbeck argued the People had made no showing regarding what

Aguon's testimony would be or how it would help the trier of fact.  At a hearing on the motion,

---

[2]  In her testimony, P.B. states that this incident occurred while she was living at an orange house in Barrigada. Tr. at 50 (Jury Trial, Aug. 24, 2022).  She explained that the Barrigada house was connected to her mother's floral shop.  *Id.* at 21-22.  Throughout trial, the location of the shop included references to both Mongmong-Toto-Maite and Barrigada.  *Compare* Tr. at 45, 57 (Jury Trial, Aug. 23, 2022), *with* Tr. at 22 (Jury Trial, Aug. 24, 2022).  For clarity, we refer to the location of this final incident as "the orange house."

the People stated that Aguon would offer her expert opinion on delayed reporting by child victims of sex crimes. The trial court agreed to allow voir dire of Aguon outside the presence of the jury to determine her qualifications.

[8]     During voir dire, Aguon explained her qualifications as a program manager at Healing Hearts Crisis Center. She had been a licensed counselor for seven years and had counseled about 70 sexual abuse victims, engaging in over 700 counseling sessions during her career. The People asked the trial court to qualify Aguon as an expert in counseling, but defense counsel objected, stating, "I don't think that testifying about delayed reporting has anything to do with counseling." Tr. at 114 (Jury Trial, Aug. 23, 2022). Kusterbeck argued that based on the elicited testimony, there was no indication Aguon had experience with delayed reporting. Recognizing that Aguon was still on the stand, the trial court allowed the People to lay foundation for her experience with delayed reporting. Aguon testified that in her experience, "most of the time" children delayed reporting sexual abuse for more than 72 hours after the incident. *Id.* at 118. When asked to estimate what percentage of children delay reporting, she stated: "In my experience in ten years at Healing Hearts, I would say that over 70 percent are delayed reporting." *Id.* She explained that reasons for a child's delayed reporting include confusion about what has occurred, relation to the perpetrator, and possible fabrication of testimony. *Id.* at 119.

[9]     The trial court ultimately overruled defense counsel's objections and allowed Aguon to testify under GRE 702, relying on *People v. Roten*, 2012 Guam 3, to find she had sufficient experience with victims of sexual assault for those experiences to constitute facts she could rely upon in giving her opinion. Aguon testified before the jury consistent with the answers she had given in voir dire.

[10]     Ultimately, the jury found Kusterbeck guilty on all counts. He was sentenced to eighteen years in prison. This appeal timely followed.

## II. JURISDICTION

[11]     This court has jurisdiction over appeals from final judgments and orders of the Superior Court. 48 U.S.C.A. § 1424-1(a)(2) (Westlaw through Pub. L. 118-80 (2024)); 7 GCA §§ 3107(b), 3108(a) (2005).

## III. STANDARD OF REVIEW

[12]     In the absence of a motion for judgment of acquittal, sufficiency of the evidence is reviewed for plain error or manifest injustice.[3] *People v. Taisacan*, 2023 Guam 19 ¶ 12 (quoting *People v. Maysho*, 2005 Guam 4 ¶ 6). Under plain error review, a conviction can be overturned only if we find "(1) there was an error; (2) the error is clear or obvious under current law; (3) the error affected substantial rights; and (4) reversal is necessary to prevent a miscarriage of justice or to maintain the integrity of the judicial process." *People v. Piyelit*, 2022 Guam 16 ¶ 18 (quoting *People v. Quitugua*, 2009 Guam 10 ¶ 11).[4]

[13]     "We review the admission of hearsay statements without objection for plain error." *People v. Morales*, 2022 Guam 1 ¶ 38 (citing *People v. Roby*, 2017 Guam ¶¶ 17-18). Under plain error,

---

[3] In his opening brief, Kusterbeck argues that *de novo* review applies to his sufficiency-of-the-evidence argument. Appellant's Br. at 11, 18, 20 (June 19, 2023). However, he fails to articulate why *de novo* review would apply. *See* Guam R. App. P. 13(9)(C) ("[A]s to each issue, Appellant shall state where in the record on appeal the issue was raised and ruled on. In addition, if a ruling complained of on appeal is one to which a party must have objected at trial, to preserve a right of review . . . the party shall state where in the record on appeal the objection and ruling are set forth."). Because Kusterbeck's appellate counsel concedes elsewhere that trial counsel did not move for a judgment of acquittal, Appellant's Br. at 11, we apply a plain error standard of review. *See People v. Taisacan*, 2023 Guam 19 ¶ 12.

[4] Whether conducting a *de novo* review of a properly preserved sufficiency claim or reviewing an unpreserved challenge to the sufficiency of the evidence for plain error, we "review[] the evidence in the light most favorable to the People," examining whether "any rational trier of fact could have found beyond a reasonable doubt the essential elements of the crime charged." *People v. Campbell*, 2006 Guam 14 ¶ 10.

"the defendant, not the government, bears the burden of showing prejudice; that is, that the defendant's substantial rights have been affected." *Quitugua*, 2009 Guam 10 ¶ 31.

[14]     Contested evidentiary rulings are reviewed for an abuse of discretion. *Morales*, 2022 Guam 1 ¶ 12. An "abuse of discretion exists when the reviewing court is firmly convinced that a mistake has been made regarding admission of evidence." *Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Cyfred, Ltd.*, 2015 Guam 7 ¶ 31 (quoting *People v. Hall*, 2004 Guam 12 ¶ 34). "[I]in order to reverse the trial court, we must first have a definite and firm conviction the trial court, after weighing relevant factors, committed clear error of judgment in its conclusion." *Id.* (quoting *People v. Quintanilla,* 2001 Guam 12 ¶ 9).

## IV.  ANALYSIS

### A.  The Evidence Is Sufficient to Uphold the Convictions Because the People Demonstrated that Each Count Occurred Reasonably Near the Period Alleged in the Indictment

[15]     Kusterbeck argues that time is an essential element of CSC and must be proved beyond a reasonable doubt.[5]  Appellant's Br. at 16-17 (June 19, 2023).  He asserts that the timing of the events was not adequately proven because of the vagueness of P.B.'s testimony and her inability to recall what age she was at the time of the CSC incidents. *See id.* at 14-15.  Because Kusterbeck did not move for a judgment of acquittal in the trial court, we review the sufficiency of evidence supporting his convictions for plain error.  *Maysho*, 2005 Guam 4 ¶ 6.  Under this standard,

---

[5] Kusterbeck raises several issues in his reply brief related to the claim that time is an essential element of CSC.  Appellant's Reply Br. at 1-5 (Aug. 29, 2023).  Because he raises these issues for the first time in a reply brief, they are forfeited, and we have discretion to reject them. *See Story-Bernardo v. Gov't of Guam*, 2023 Guam 27 ¶ 28. In any event, Kusterbeck's arguments lack merit because time is not an essential element of CSC, and any jury instruction that created a higher burden for the People would be harmless error that had no prejudicial effect on him. *See People v. Chambers*, 2023 Guam 15 ¶ 22. Kusterbeck also argues for the first time in his reply brief that a material variance existed between the indictment and the evidence presented at trial.  Reply Br. at 8.  Because he fails to articulate how this alleged variance either (1) took him by surprise and hindered his ability to present a defense, or (2) exposes him to the risk of another prosecution for the same offense, we will not exercise our discretion to reach this forfeited issue. *See People v. Wesen*, 2022 Guam 18 ¶ 40.  Finally, for the first time in his reply brief, Kusterbeck raises the issue of jury unanimity.  We also decline to reach this issue.

Kusterbeck bears the burden of showing that an error that was obvious under current law affected his substantial rights. Like any sufficiency challenge, we focus on "the mere existence or nonexistence of evidence, not its weight," and we "consider the evidence presented at trial in the light most favorable to the prosecution." *People v. Riosen*, 2023 Guam 23 ¶¶ 28-29 (citations omitted).

[16] Kusterbeck's analysis is wrong regarding whether an error occurred. He was convicted on charges of CSC I and CSC II. We have repeatedly held that time is not an essential element for these crimes. *See People v. Campbell*, 2006 Guam 14 ¶ 16 ("[T]ime is in fact not a material element of the offense of First Degree Criminal Sexual Conduct . . . , nor is it a material element of the offense of Second Degree Criminal Sexual Conduct . . . ."); *People v. Taitano*, 2015 Guam 33 ¶ 16 ("[T]ime is not an essential element of the offense of Second Degree CSC."). Therefore, the People need only have proved that the incident occurred "reasonably near" the period alleged in the indictment. *Taitano*, 2015 Guam 33 ¶ 15.

[17] There is sufficient evidence to prove that the incidents occurred before the return of the indictment. The indictment alleged that two instances of CSC occurred in 2018, and that a third occurred in 2019. The first incident—touching of the primary genital area—was alleged to have occurred between April 1 and December 1, 2018. The second incident—oral sex—was alleged to have occurred between January 1 and August 1, 2018. The last incident—touching of the primary genital area—was alleged to have occurred between January 1 and February 28, 2019.

[18] P.B. testified that while the family was living in Santa Rita, Kusterbeck touched her vagina over her clothes. Tr. at 26-28 (Jury Trial, Aug. 24, 2022). There is evidence in the record that the family lived in Santa Rita for several years before moving sometime in 2018. *See* Tr. at 49, 90

(Jury Trial, Aug. 23, 2022).[6]  This timeframe is reasonably near the period of April 1 to December 1, 2018, alleged in the indictment.  *See Taitano*, 2015 Guam 33 ¶ 16 ("Even accepting Taitano's premise that the trial evidence indicated the assault had occurred in 2008 or 2009, this timeframe would be reasonably near enough to the alleged period of 2010 to affirm the sufficiency of evidence.").

[19]    P.B. testified that Kusterbeck forced her to perform oral sex after the touching incident in Santa Rita and before the family moved to Barrigada.  Tr. at 26, 31 (Jury Trial, Aug. 24, 2022).  She testified it occurred when she was in the second or third grade.  *Id.* at 29.  Based on her testimony, P.B. would have been in third grade during the 2017-2018 school year.  *See* Tr. at 15-16 (testifying she was in 8th grade at the time of trial in August 2022).  This timeframe is reasonably near the period of January 1 to August 1, 2018, alleged in the indictment.  *See Taitano*, 2015 Guam 33 ¶ 16.

[20]    Finally, P.B. testified that Kusterbeck touched her at the orange house.  Tr. at 33 (Jury Trial, Aug. 24, 2022).  P.B. testified that they moved to Barrigada when she was in fourth grade, and she reported Kusterbeck to her fifth-grade teacher.  *Id.* at 22, 25.  Based on her testimony, P.B. began fourth grade in the fall of 2018.  *See id.* at 15-16.  Officer Pewtress testified that he received a report of P.B.'s CSC complaint on February 26, 2020.  Tr. at 42 (Jury Trial, Aug. 23, 2022).  Thus, the People showed the final incident occurred between August 2018 and February 2020.  This is reasonably near the period of January 1 to February 28, 2019, alleged in the indictment.  *See Taitano*, 2015 Guam 33 ¶ 16.

---

[6] P.B.'s mother testified that they lived in Santa Rita for two years, although she could not remember the exact time period.  Tr. at 90 (Jury Trial, Aug. 23, 2022).  Officer Pewtress testified that, in his interview with Kusterbeck, Kusterbeck told him the family lived in Santa Rita until sometime in 2018.  *Id.* at 49.  This testimony, unlike Officer Pewtress's testimony about P.B., is not hearsay because it is an admission by a party-opponent.  *See* Guam R. Evid. 801(d)(2*); see also People v. Pinaula*, 2023 Guam 2 ¶¶ 85-86 (Carbullido, J., concurring in part).

**[21]**     Taken together, even though specific months were not proffered, the evidence from these testimonies suggests that the incidents took place "reasonably near" the alleged dates in the indictment.  P.B. was able to clearly articulate the specific sexual acts for each incident.  *See* Tr. at 27-28, 31-34 (Jury Trial, Aug. 24, 2022).  "[I]n the interests of justice and recognizing that young children cannot be expected to be exact regarding times and dates, a child's uncertainty as to time or date upon which the offense charged was committed goes to the weight rather than the admissibility of the evidence."  *Campbell*, 2006 Guam 14 ¶ 28 (quoting *State v. Wood*, 319 S.E.2d 247, 249 (N.C. 1984)).  Because there was sufficient evidence on the timing of the offenses, the trial court did not commit plain error.

**B.  The Admission of the Officer's Hearsay Testimony Was Not Plain Error**

**[22]**     Kusterbeck argues that it was plain error for the trial court to admit Officer Pewtress's testimony surrounding the offense dates because it was inadmissible hearsay.  Appellant's Br. at 20-23.  In response, the People argue there was no error because Kusterbeck opened the door to that line of questioning by bringing up the dates on cross-examination.  Appellee's Br. at 13-16 (Aug. 16, 2023).

> **1.  The admission of the hearsay testimony is reviewable for plain error under the invited error doctrine**

**[23]**     We clarify the scope of invited error, which has not yet been applied by this court.  Invited error occurs when a party introduces otherwise inadmissible evidence at trial.  *See Estoppel to Allege Error; Invited Error*, 36 C.J.S. *Federal Courts* § 608 (May 2024 Update).  We have held that the invited error doctrine does not apply when the defendant was merely silent on an issue; "rather, for the doctrine to apply, a defendant 'must affirmatively invite the error.'"  *Piyelit*, 2022 Guam 16 ¶ 21 (quoting *People v. Ramey*, 2019 Guam 11 ¶ 13); *see also People v. Finik*, 2017 Guam 21 ¶ 42.  Invited error is distinct from other evidentiary doctrines, like that of "opening the

door," because (1) it does not require any affirmative action by the opponent, and (2) it requires an additional plain error analysis.[7]

[24]     Although we have yet to apply the invited error doctrine,[8] we have repeatedly recognized that "the invited error doctrine 'may preclude a party from raising certain issues on appeal.'" *People v. Hosei*, 2023 Guam 22 ¶ 22 (quoting *Piyelit*, 2022 Guam 16 ¶ 21).  And we recently observed that "we are inclined to apply the Ninth Circuit's invited error jurisprudence in the appropriate case." *Id.* ¶ 28.  We now adopt the Ninth Circuit's formulation of the invited error doctrine as explained in *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997): "If the defendant has both invited the error, and relinquished a known right, then the error is waived and therefore unreviewable."  However, where the defendant invited the error but merely forfeited their

---

[7] We clarify various evidentiary doctrines as follows:

- "*Opening the door*": Occurs when a party introduces evidence or takes an action that allows previously inadmissible evidence to become admissible.  For instance, a criminal defendant presenting evidence of good character enables the admission of prosecution evidence regarding bad character.

- "*Invited error*": Arises when a party seeks appellate correction for an error attributable to them.  For instance, a plaintiff convinces the trial court to admit evidence of subsequent remedial measures, then later contests this admission despite initially arguing its admissibility.

- "*Curative admissibility*" or "*fighting fire with fire*": Permits the introduction of otherwise inadmissible evidence to counteract prejudicial evidence that cannot be remedied by jury instruction.  This prevents mistrial and dispels potential harm to the aggrieved party.

- "*Waiver*" or "*true waiver*": Occurs when a party stipulates or indicates to the trial court a belief in the admissibility of certain evidence, such as by withdrawing a prior objection.  This differs from "phony waiver," a term used to explain why failing to comply with Rule 103 does not preserve error for appeal.

- "*Estoppel to object*": Refers to the appellate court's refusal to review an error preserved under Rule 103 due to the party's failure to object to similar evidence from an opponent or the party's introduction of other evidence that would have been inadmissible on the same grounds.

Charles Alan Wright & Arthur R. Miller, 21 *Fed. Prac. & Proc. Evid.* § 5039 (2d ed.).

[8] Invited error has been applied once before in *People v. Alvarez*, D.C. Crim. No. 83-00017A, S.C. Crim. No. 91F-82, 1984 WL 48831 (D. Guam App. Div. May 22, 1984), *aff'd*, 763 F.2d 1036 (9th Cir. 1985).  The District Court of Guam Appellate Division properly found the defendant had "invited the error and he must now live with his choice" because "trial counsel made a clear, deliberate and calculated decision when he opted for the request of the alleged erroneous jury instruction." *Id.* at *3.  But the court recognized its discretion to notice plain errors on appeal and made this finding within the plain error framework, concluding that defendant's substantial rights were not affected. *See id.* at *2-3.

objection, we will review for plain error. *See id.* at 846. In the context of invited evidentiary errors, this formulation is also consistent with the Guam Rules of Evidence. Rule 103 states that error cannot be predicated upon a ruling admitting evidence unless a timely objection or motion to strike is made, *see* Guam R. Evid. 103(a)(1), with the caveat that nothing in the rule prevents taking notice of plain error, *see* Guam R. Evid. 103(d).

[25] We recognize that many courts do not conduct a plain error review of invited errors.[9] We share the New Hampshire Supreme Court's concerns regarding the denial of plain error review for invited errors. *See State v. Richard*, 7 A.3d 1195, 1201-02 (N.H. 2010). "In order to eliminate the machinations of a few, the invited error ban denies appellate review to all." *Id.* at 1202 (quoting Sean Arthurs, Comment & Case Note, *A Foolish Consistency: How Refusing to Review* Ford v. Garcia*'s Invited Error Demonstrates the Eleventh Circuit's Prioritization of Procedure over Justice*, 72 U. Cin. L. Rev. 1707, 1721 (2004)). This narrow view of the invited error doctrine "removes any discretionary remedy from the appellate court's panoply of options and subjugates the interests of justice to the demands of a procedural mechanism." Arthurs, *supra*, at 1722. We conclude that, to serve the ends of justice properly, an additional plain error analysis of invited errors is warranted.

---

[9] *See People v. Harding*, 2012 IL App (2d) 101011, ¶ 17 ("[P]lain-error review is forfeited when the defendant invites the error."); *State v. Popp*, 2019 UT App 173, ¶ 23, 453 P.3d 657 ("[W]hen an error is invited by an appellant, we will not review it even for plain error." (alteration in original) (quoting *State v. Oliver*, 2018 UT App 101, ¶ 27, 427 P.3d 495)); *United States v. Campbell*, 764 F.3d 874, 879 (8th Cir. 2014) ("Whether couched as invited error or more generally as waiver, the result is the same—this court will not conduct plain-error review."); *State v. Miller*, 889 S.E.2d 231, 234 (N.C. Ct. App. 2023) ("Thus, a defendant who invites error has waived his right to all appellate review concerning the invited error, including plain error review." (quoting *State v. Crane*, 837 S.E.2d 607, 608 (N.C. Ct. App. 2020))); *Shaw v. State*, 742 S.E.2d 707, 710 n.3 (Ga. 2013) ("We note that, even where plain error appears, reversal is not warranted if the error was invited by the appellant."); *State ex rel. Juv. Dep't of Multnomah Cnty. v. S.P.*, 215 P.3d 847, 855 (Or. 2009) (en banc) ("This court has determined that it will not exercise its discretion to review an asserted plain error if the party seeking review encouraged commission of the error in question or made a strategic choice not to object."); *United States v. Long*, 997 F.3d 342, 353 (D.C. Cir. 2021) ("It is settled that a defendant 'may not complain about invited error' on appeal." (quoting *United States v. Brown*, 892 F.3d 385, 393 (D.C. Cir. 2018))).

**[26]**    Turning to the *Perez* formulation, we must first determine whether Kusterbeck both (1) invited the alleged error and (2) relinquished a known right.  116 F.3d at 845.  If so, the alleged error is deemed "waived and therefore unreviewable."  *Id.*  If, however, Kusterbeck invited the alleged error but merely forfeited his objection to it, we will review for plain error.  *Id.* at 846; *see also* Guam R. Evid. 103(d).

**[27]**    We determine Kusterbeck invited the alleged hearsay error because his counsel elicited the testimony during cross-examination of Officer Pewtress.  *See United States v. Reyes-Alvarado*, 963 F.2d 1184, 1187 (9th Cir. 1992) (finding invited error where defense counsel elicited statement on cross-examination that defendant later argued should have been excluded); *Johnson v. I.N.S.*, 971 F.2d 340, 343-44 (9th Cir. 1992) (finding invited error where defense counsel offered into evidence the document he then sought to challenge on appeal as inadmissible hearsay); *see also United States v. Magdaleno*, 43 F.4th 1215, 1220 (9th Cir. 2022) (explaining these cases must be interpreted in light of *Perez*'s clarification of invited error doctrine).  Defense counsel did not move to strike this purported hearsay testimony.  *See* Guam R. Evid. 103(a)(1).  We find that defense counsel's failure to object to the admission of the testimony was inadvertent and amounted to a forfeiture rather than a waiver; thus, we will review for plain error.  *Cf. Marshall v. United States*, 409 F.2d 925, 927 (9th Cir. 1969) ("While [plain error] may be invoked when the court believes that a party should not be unalterably and unfairly prejudiced by inadvertent or ignorant mistakes of his counsel, it is not invoked where . . . the failure to object may have been deliberate and in furtherance of legitimate trial tactics."); Lissa Griffin, 1 *Federal Criminal Appeals* § 4:45 (July 2024 Update).

//

//

**2. The trial court did not commit plain error by admitting the hearsay testimony**

[28] On plain error review, we will reverse only if "(1) there was an error; (2) the error is clear or obvious under current law; (3) the error affected substantial rights; and (4) reversal is necessary to prevent a miscarriage of justice or to maintain the integrity of the judicial process." *Piyelit*, 2022 Guam 16 ¶ 18 (quoting *Quitugua*, 2009 Guam 10 ¶ 11).

**a. The error was clear or obvious under current law**

[29] Kusterbeck argues that the trial court committed plain error in allowing hearsay testimony from Officer Pewtress about P.B.'s recollection of the "alleged offense timeframe." Appellant's Br. at 5. Defense counsel's cross-examination of Officer Pewtress regarding his interview with P.B. was as follows:

> Q   Okay. And was there a date given to you as to when this happened?
>
> A   No, sir.
>
> Q   Was there a month given to you as to when it happened?
>
> A   I don't believe so, no.
>
> Q   Was there a year?
>
> A   Yes.
>
> Q   Do you recall what year?
>
> A   2018.
>
> Q   Okay. Was there a time of day?
>
> A   It was afternoon.

Tr. at 57 (Jury Trial, Aug. 23, 2022). This same line of questioning occurred as to the final incident:

> Q   Okay. And was there a day given when that happened?

A       No, sir.

Q       A month?

A       No, sir.

Q       A year?

A       Yes.

Q       What year?

A       2019.

*Id.* at 57-58.

[30]     This evidence is hearsay—"a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Guam R. Evid. 801(c). But not all hearsay is inadmissible. *Roten*, 2012 Guam 3 ¶ 16. Hearsay is admissible if it falls into one of the listed exceptions. Guam R. Evid. 803; *Roten*, 2012 Guam 3 ¶ 16. The testimony here falls under no exception. An officer cannot disclose the substance of a conversation with a victim. *See People v. Tedtaotao*, 2016 Guam 9 ¶ 20; *see also Roten*, 2012 Guam 3 ¶ 19.[10] Officer Pewtress testified about the substance of his interview with P.B.—by disclosing her memory of the offense dates—for the truth of the matter asserted: to prove when the alleged CSC incidents occurred. The dates of the offenses are important, as the prosecution

---

[10] We have recognized that in some instances, law enforcement testimony regarding out-of-court statements may be used to provide background information on an investigation, but we have noted the limits on this type of testimony:

> A police officer . . . may reconstruct the steps taken in a criminal investigation, may testify about his contact with [a witness], and may describe the events leading up to a defendant's arrest, but the officer's testimony must be limited to the fact that he spoke to [a witness] without disclosing the substance of that conversation. There is a clear distinction between an [officer] testifying about the fact that he spoke to [a witness] without disclosing the contents of the conversation and the agent testifying about the specific contents of the conversation which is inadmissible hearsay.

*People v. Roten*, 2012 Guam 3 ¶ 19 (alterations in original) (emphasis omitted) (quoting *United States v. Williams*, 133 F.3d 1048, 1052 (7th Cir. 1998)).

must prove these offenses occurred "reasonably near" the period alleged in the indictment. *Taitano*, 2015 Guam 33 ¶ 15. Admitting this inadmissible hearsay testimony was an error that was "clear or obvious 'under current law.'" *See People v. Felder*, 2012 Guam 8 ¶ 21 (quoting *United States v. Olano*, 507 U.S. 725, 734 (1993)).

### b. Kusterbeck fails to show the error affected his substantial rights

[31]     "Even though an error is clear or obvious under current law, under plain error review we will not reverse unless the error affected the defendant's substantial rights." *Hosei*, 2023 Guam 22 ¶ 68. Kusterbeck has the burden of showing that his substantial rights have been affected. *See Quitugua*, 2009 Guam 10 ¶ 31. To establish that the trial court's erroneous admission of hearsay testimony affected his substantial rights, Kusterbeck "must establish by 'a reasonable probability' that but for the claimed error the result of the proceeding would have been different." *Morales*, 2022 Guam 1 ¶ 46 (quoting *People v. Reyes*, 2020 Guam 33 ¶ 25). We find that Kusterbeck has failed to establish by a reasonable probability that but for the hearsay elicited from Officer Pewtress by defense counsel, the result of the proceeding would have been different. The officer's testimony was not the only evidence of timing. Even without his testimony, there was still evidence to suggest all three offenses occurred "reasonably near" the periods alleged in the indictment. P.B. testified that the first incident occurred when she lived in Santa Rita. Tr. at 22 (Jury Trial, Aug. 24, 2022). She testified that the second incident occurred when she was in the second or third grade, before moving to Barrigada. *See id.* at 29, 33. And she testified the third incident occurred when she lived in Barrigada in fourth or fifth grade. *See id.* at 22, 25, 33. Because there was independent evidence to corroborate time periods reasonably near what was alleged in the indictment, the outcome of the trial would not have changed but for the hearsay testimony. Admitting the testimony was not plain error.

### 3. The trial court did not commit plain error when it admitted hearsay evidence elicited by the People on redirect

**[32]** After refreshing Officer Pewtress's memory, the People elicited the following testimony on redirect:

> Q        Okay. Did [P.B.] tell you what month in 2019 that the [third] incident occurred, the one at [the orange house]?
>
> A        Yes, sir, January or February of 2019.
>
> Q        Did she say what day of the week it was by chance?
>
> A        Possibly on the weekend.

Tr. at 60 (Jury Trial, Aug. 23, 2022).

**[33]** Kusterbeck argues this testimony was inadmissible hearsay. Defense counsel did not object to the People's redirect; therefore, it is subject to plain error review. *See People v. Moses*, 2007 Guam 5 ¶ 8.

**[34]** This testimony was inadmissible hearsay because the officer was asked to repeat what P.B. told him for its truth as to the timing of the offense. *See Roten*, 2012 Guam 3 ¶ 20; *Tedtaotao*, 2016 Guam 9 ¶ 20. Like the hearsay testimony elicited from Officer Pewtress on cross-examination, admitting the hearsay testimony on redirect was clear error under current law. The People argue the hearsay testimony was admissible because Kusterbeck opened the door by "creating a misleading impression" about the timing of the final offense, and the People had to clarify by "fighting fire with fire" through otherwise inadmissible evidence. Appellee's Br. at 14-15. That defense counsel allowed in similar evidence did not cure the People's error. The People are held to a higher standard. "Even if the defense improperly introduces inadmissible evidence, 'the prosecutor is not absolved of [their] ethical duty to ensure a fair trial by presenting only

competent evidence on the subject.'" *State v. Rushworth*, 458 P.3d 1192, 1198 (Wash. Ct. App. 2020) (alteration in original) (quoting *State v. Jones*, 183 P.3d 307, 315 (Wash. Ct. App. 2008)).

[35]     While Kusterbeck has satisfied the first two prongs of plain error review, he has not shown this error affected his substantial rights.  P.B.'s testimony independently demonstrated a time period reasonably near what was alleged in the indictment.  Tr. at 22, 25-26, 29 (Jury Trial, Aug. 24, 2022).  Kusterbeck has failed to establish by a reasonable probability that but for the hearsay testimony elicited by the People on redirect, the outcome of the trial would have been different. *See Morales*, 2022 Guam 1 ¶ 46.  The admission of the hearsay testimony did not rise to the level of plain error.

## C. The Trial Court Did Not Abuse its Discretion by Admitting Expert Witness Testimony About Delayed Reporting

[36]     Kusterbeck argues the trial court "abused its discretion in admitting expert testimony on the phenomenon of delayed reporting."  Appellant's Br. at 23 (internal quotation marks omitted). He argues the trial court abused its discretion because the legal requirements for expert testimony under GRE 702 were not met.  *Id.* at 24.  Kusterbeck's list of various alleged errors misapprehends the requirements of Rule 702.

[37]     Rule 702 governs the admissibility of expert witness testimony.  The rule states:

> If scientific, technical, or other specialized knowledge will assist the tier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

Guam R. Evid 702.  We have often phrased the Rule 702 requirements as a two-part inquiry, determining "(1) whether the witness is qualified via knowledge, skill, experience, training, or education and (2) whether the witness' testimony will assist the trier of fact."  *Roten*, 2012 Guam

3 ¶ 30 (emphasis omitted) (quoting *In re N.A.*, 2001 Guam 7 ¶ 44). However, this analysis was created in reference to the 1994 version of the GRE, which was changed in 2006 to mirror the federal rule, codifying key aspects of the U.S. Supreme Court's *Daubert* and *Kumho Tire* decisions. *See* Guam R. Evid. 702, Source; 29 *Fed. Prac. & Proc. Evid.* § 6267 (2d ed.).

[38]     We take this opportunity to clarify that amended Rule 702 includes the assurance that expert testimony be reliable. As we have held, "the trial court's general 'gatekeeping' obligation applies not only to testimony based on 'scientific' knowledge, but also to testimony based on 'technical' and 'other specialized' knowledge." *People v. Santos*, 2021 Guam 12 ¶ 28 (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 141 (1999)). Expert testimony is "admissible only if it is both relevant and reliable." *People v. Mateo*, 2017 Guam 22 ¶ 30 (quoting *Kumho Tire*, 526 U.S. at 141); *see also Santos*, 2021 Guam 12 ¶ 28 ("[T]he role of the trial court is to 'serve as the "gatekeepers" of admissibility for expert testimony, with the aim of ensuring such testimony is reliable and helpful to the jury.'" (quoting *State v. Romero*, 365 P.3d 358, 361 (Ariz. 2016))). Therefore, we look to the witness's qualifications, the helpfulness of the testimony to the trier of fact, and the reliability of the testimony. *See Doe v. Rollins Coll.*, 77 F.4th 1340, 1347 (11th Cir. 2023), *cert. denied*, 144 S. Ct. 1056 (2024) ("[Rule 702] has three basic requirements: the expert must be qualified; his methodology must be reliable; and his testimony must be helpful to the trier of fact.").

[39]     First, we look to whether Aguon was properly qualified as an expert on delayed reporting. An expert may be qualified based on his or her own experiences alone, as long as the testimony is based on specialized knowledge. *See Roten*, 2012 Guam 3 ¶¶ 27-28. In *Roten*, we concluded the trial court properly qualified a police officer as an expert on delayed reporting because he had

extensive personal experience with the issue—having investigated around 150 sexual assault cases and interviewed 60-70 victims. 2012 Guam 3 ¶¶ 27-29.

[40] Aguon, like the witness in *Roten*, had extensive personal experience with sexual assault victims and delayed reporting.[11] She directly counseled about 70 sexual assault victims. Based on her experience, she approximated that over 70% of child victims delayed reporting. Because there is evidence in the record on which the trial court could have rationally based its decision to qualify Aguon as an expert on delayed reporting, it did not abuse its discretion.

[41] However, "[s]imply because an expert is qualified to deliver opinion testimony, it does not automatically follow that admission of opinion testimony is proper." *Roten*, 2012 Guam 3 ¶ 30. We must also look to whether Aguon's testimony helped the trier of fact. This is not an analysis of "whether we would have excluded the testimony if we had sat as the trier of fact." *In re N.A.*, 2001 Guam 7 ¶ 45. Rather, we look to whether the trial court abused its discretion in admitting the testimony—specifically analyzing whether the testimony would help the trier of fact in interpreting the evidence. *See id.* ¶ 46.

[42] Relying on *Roten*, the trial court found that "when victims in general first report crimes is a relevant factual issue." *See* Tr. at 123 (Jury Trial, Aug. 23, 2022); *see also Roten*, 2012 Guam 3 ¶ 34 ("Testimony amounting to general discussion of delayed reporting of sexual assault is considered proper. When victims in general first report crimes is a relevant factual issue, and evidence presented on the issue may properly assist the finder of fact in rendering a proper verdict." (emphasis omitted)). Testimony about delayed reporting, specifically the reasons why children

---

[11] Kusterbeck's arguments that the record does not establish (1) "that delayed reporting had anything to do with the witness's expertise in general counseling" and (2) "that academic study and being a counselor qualified the witness as an expert in the phenomenon [sic] delayed reporting" are without merit. Appellant's Br. at 25. "It is well established that . . . '[a]ll you need to be an expert witness is a body of specialized knowledge that can be helpful to the jury.'" *People v. Caso*, 2022 Guam 6 ¶ 37 (second alteration in original) (quoting *Roten*, 2012 Guam 3 ¶ 28). A witness's personal experience may qualify them as an expert if it is "clearly beyond the experience and knowledge of ordinary lay persons." *Id.* ¶ 39.

might delay reporting, is helpful for the trier of fact to get an overarching idea of why the victim may have delayed reporting in this case. Aguon's list of potential reasons an alleged victim may delay reporting were not only favorable to the prosecution. *See* Tr. at 135-36 (Jury Trial, Aug. 23, 2022) (agreeing that fabrication of testimony may be a reason an alleged victim delays reporting).

[43]    That Aguon did not have any personal contact with P.B. or details of the situation lends more credit to her expert testimony, not less. "This is because general discussion of delayed reporting does not speak as directly to credibility as *what a specific victim* reports and how a particular story might change over time." *Roten*, 2012 Guam 3 ¶ 34. Because Aguon had no contact with P.B. or personal knowledge of the situation, she could not opine on P.B.'s credibility, allowing the jury to come to its own conclusions on credibility. *Cf. Roten*, 2012 Guam 3 ¶ 35 ("[T]estimony implying that the decision of the victim . . . to delay reporting the alleged assaults for several weeks was consistent with the phenomenon of delayed reporting in general was improper, as it 'bolstered' the victim's credibility in the eyes of the jury."). Kusterbeck points to no factors the trial court improperly considered, nor does he identify any factors the trial court omitted when it considered whether the expert testimony would be helpful to the jury.

[44]    Finally, we must examine whether the trial court sufficiently considered the reliability of Aguon's testimony. Like the federal rule, our 2006 amendment to GRE 702 "did not codify the specific *Daubert* factors, leaving room for trial courts to determine the factors pertinent to reliability in each case." 29 *Fed. Prac. & Proc. Evid.* § 6267. The test for admissibility of expert testimony is "flexible." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594 (1993). But that does not mean expert testimony outside the scientific realm will be treated any more permissively. *See* Fed. R. Evid. 702 advisory committee's note to 2000 amendment ("An opinion from an expert who is not a scientist should receive the same degree of scrutiny for reliability as

an opinion from an expert who purports to be a scientist."). "[W]itnesses 'relying solely or primarily on experience . . . must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts.'" *United States v. Medina-Copete*, 757 F.3d 1092, 1104 (10th Cir. 2014) (second alteration in original) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment).

[45]     We repeat that the best practice in deciding the admissibility of proffered expert evidence is for a "trial court's analysis [to] reflect proper consideration of the factors required by GRE 702," including reliability. *Santos*, 2021 Guam 12 ¶ 29. "A trial judge should strive to ensure a proper record is developed in resolving challenges to proffered expert evidence, which includes the analysis and rationale applied by the court." *Id.*

[46]     The trial court's analysis reflects that it properly considered how Aguon's experience led to the conclusion she reached and whether her experience was a sufficient basis for her opinion. *See* Tr. at 122-23 (Jury Trial, Aug. 23, 2022) ("In *Roten*, the officer's previous experiences with victims of sexual assault constituted the facts that the officer relied upon in delivering his opinion. Here, Ms. Aguon's previous experiences [with victims of sexual assault] have similarly been provided through the People's voir dire . . . . [T]estimony amounting to general discussion of delayed reporting of sexual assault is considered proper."). Contrary to Kusterbeck's assertions, there is no particular data set or methodology an expert *must* use or prove. *See Roten*, 2012 Guam 3 ¶ 29; *see also* Appellant's Br. at 25. The trial court did not abuse its discretion in admitting Aguon's expert testimony when it ruled her experience as a counselor was sufficient basis for her opinion about delayed reporting, and Aguon had sufficiently explained how her experience led to her opinion about the prevalence of and potential reasons for delayed reporting.[12]

---

[12] We agree with the Arizona Supreme Court that "the amendment [of FRE 702] did not 'alter the venerable practice' of permitting experts 'to educate the factfinder about general principles, without ever attempting to apply

**[47]**    Because the trial court properly considered the requirements of Rule 702 and found Aguon was qualified, her testimony would be helpful to the jury, and her testimony was reliable, the court did not abuse its discretion in allowing the testimony.

## V.  CONCLUSION

**[48]**    Ultimately, we find there was sufficient evidence because the People showed each count occurred reasonably near the period alleged in the indictment.  The admission of hearsay testimony was not reversible error because Kusterbeck has failed to show how the error affected his substantial rights.  Finally, the trial court did not abuse its discretion in admitting expert witness testimony because it found the testimony met all the requirements of GRE 702.  The Superior Court's judgment is **AFFIRMED**.

<table>
<tr>
<td align="center">/s/<br>——————————————<br>F. PHILIP CARBULLIDO<br>Associate Justice</td>
<td align="center">/s/<br>——————————————<br>KATHERINE A. MARAMAN<br>Associate Justice</td>
</tr>
</table>

/s/
——————————————
ROBERT J. TORRES
Chief Justice

---

these principles to the specific facts of the case.'"  *State v. Salazar-Mercado*, 325 P.3d 996, 999 (Ariz. 2014) (quoting Fed. R. Evid. 702 advisory committee's note to 2000 amendment).  The amendment of our analogous rule likewise does not preclude the type of "cold" testimony given by Aguon in this case.  If an expert applies principles and methods to the facts of the case, he or she must do so reliably; but Rule 702 does not bar experts from providing general, educative testimony that otherwise meets the requirements of admissibility.